WELLS *vs.* WHITEHEAD.

Where the *second* of a set of three *bills of exchange* is protested for non-acceptance, and a suit is brought against the *endorser*, and the plaintiff declares on the *first* of the set, he is not entitled to recover, unless he produces the *second* of the set which was protested, or accounts satisfactorily for its non-production; the defendant may require its production, to guard against a subsequent claim, by an acceptor *supra protest.*

It is not necessary, to the support of an action against an endorser of a bill of exchange, that notice of *non-acceptance* should be accompanied with a copy of the bill and protest; notice alone is sufficient.

A bill of exchange, drawn in *one* state, on persons living in *another*, is to be treated, *it seems*, as a *foreign*, and not as an *inland* bill.

A defendant is not allowed to object to, *want of diligence* in giving notice of non-acceptance, in respect to the place to which the notice is directed, when sent by mail, if the evidence of diligence is *prima facie* sufficient, and there be no proof on his part that the notice was sent to a wrong place.

THIS was an action of *assumpsit*, tried at the New-York circuit in March, 1833, before the Hon. OGDEN EDWARDS, one of the circuit judges.

The suit was against the defendant, as the *endorsee* of a bill of exchange, drawn at *Key West*, in *Florida*, on a mercantile house at *Boston*, dated 31st March, 1831, payable to the defendant 60 days after sight, described in the declaration as the *first* of a set of three bills, the *second* and *third* being unpaid. The bill declared on was produced at the trial, and the signature of the defendant proved. It was also proved that on the 23d April, 1831, the *third* of the set of bills was presented by a notary to the drawees for acceptance, and acceptance refused; that on the same day the notary protested the bill for non-acceptance, and sent notice thereof per mail, directed to the defendant at *Key West*, where was the residence and place of business of the defendant, as the notary was told. A copy of the protest was proved by the notary. On this evidence the plaintiff rested. The defendant moved for a nonsuit, insisting that the plaintiff was not entitled to recover, 1. Because he had not produced the *identical bill*, or number of the set which had been protested, or accounted for its non-production; and 2. That the evidence was not sufficient to show due diligence

in respect to the notice of non-acceptance. The judge refused to nonsuit the plaintiff, and under his direction the jury found a verdict against the defendant, who excepted, and now moved for a new trial.

*S. Sherwood*, for the defendant.

*D. Lord, junior*, for plaintiff.

*By the Court*, NELSON, J. Two objections were taken in this case to the plaintiff's right to recover, which were overruled by the circuit judge: 1. That the suit being against an endorser, on a protest for non-acceptance of a bill of exchange drawn in parts, it was incumbent upon the plaintiff to produce at the trial the identical bill, or number of the set that was protested, or account for its absence ; and 2. That sufficient evidence was not given to establish the fact that the defendant had been duly notified of the non-acceptance, or that due diligence had been used for that purpose.

The law on this point is correctly laid down by Chancellor Kent in his Commentaries. He says, " If several parts, as is usual, of a bill of exchange, be drawn, they all contain a condition to be paid, provided the others remain unpaid, and they collectively amount to one bill, and a payment to the holders of either is good, and a payment of one of a set is payment of the whole. The drawer or endorser, to be charged on non-acceptance or non-payment, is entitled to call for the protest, and the identical bill, or number of the set protested, before he is bound to pay ; and it would be sufficient to produce it at the trial, or account for its absence. His rights attach to the bill dishonored, and he is entitled to call for it. He may want it for his own indemnity, and without it he might be exposed to claims from some *bona fide* holder, or person who had paid *supra protest* for his honor." 3 *Kent's Com.* 109. As to the right of the drawer or endorser to call for the protest, the chancellor must be considered as referring to a *foreign bill*, no protest being necessary in respect to a domestic or inland bill.

Where the bill has been protested for non-acceptance, any person may accept it *supra protest* for the honor of the bill, the

drawer, or any particular endorser. This usage promotes the negotiation of it, when the drawer's credit is suspected, and may save the character and prevent the prosecution of some of the parties, in case the drawee cannot be found, is not capable of accepting, or refuses. *Chitty on Bills,* 241. 3 *Kent's Comm.* 87. The person accepting *supra protest* subjects himself to the same obligations as if the bill had been directed to him ; and if he accepts for the honor of the drawer or endorser, though without his knowledge, he has a remedy against such persons, and all others liable to them, for his responsibilities assumed, the same as if he acted under their direction. *Chitty,* 243. 3 *Kent's Comm.* 87. 1 *Esp. N. P. R.* 113. 1 *Ld. Raym.* 575. If he takes up the bill for the honor of the endorser, he stands in the light of an endorsee, paying full value for it, and has the same remedies to which he would be entitled against all prior parties. From this doctrine it seems to me clearly to follow, that if *the bill* presented to the payees, in this case, had been accepted by a friend of the defendant, for his honor, after the refusal by the payees to accept, the defendant would be bound to indemnify him, notwithstanding a recovery, on the number of the set produced at the trial. It is true, as a general rule, payment of one of the set is payment of the whole, but if the drawer or endorser is entitled to call for the *identical bill dishonored,* before he is obliged to pay it, the omission to do so would subject him to the charge of negligence, and make him, notwithstanding, accountable to the person who had accepted it for his honor. Indeed, if he stands in the light of an endorsee for the value of a bill transferred before due, there is no escape from this liability. His security, therefore, requires that he should be allowed to call for the bill protested before a recovery is permitted to be had against him.

The view of the law, as taken by Chancellor Kent, is supported by several approved authorities. *Chitty on Bills,* 387. 2 *Starkie's Ev.* 142. 1 *Saund. Pl. & Ev.* 318, 275. 4 *Petersdorff's Abr.* 536. According to these authorities all the sets should be produced in case of a *foreign bill.* In the case of *Kenworthy* v. *Hopkins,* 1 *Johns. Cas.* 107, to which Chancellor Kent refers, to sustain his qualification of this rule,

the *second* of the set was declared on, which was the one accepted, and the only one produced at the trial. It was there objected that notice of protest for non-payment was insufficient, on the ground that the identical bill protested had not accompanied it. It was accompanied by one of the set that had not been accepted, or protested, and payment was refused on that ground. The court decided that the holder had a right to retain the bill accepted, as he might want it to proceed against other parties, and intimated that the production or presentation of it was essential only when payment was demanded. The marginal note of that case does not correctly state the point decided ; nor did the facts call for an examination or decision of the question as there stated. The note would sustain the ruling of the judge in this case ; it is there laid down that where one of a set of three bills of exchange on London was protested for non-payment, it was held an action might be maintained here against the endorsers on one of the set not protested, with the protest of the other. In truth, the point particularly examined in that case is no longer of any importance, because the better opinion now is, that a copy of the bill and protest need not accompany the notice, in the case of a *foreign bill.* Notice of the fact of non-acceptance or non-payment is sufficient. *Chitty on Bills,* 217, *and cases there cited.* 3 *Kent's Comm.* 93, 109. 3 *Campb.* 334. 2 *Esp. N. P. R.* 511. 10 *Mass. R.* 5, *and note.* 1 *Selw.* 273. 4 *Esp. N. P. R.* 48. Production of the protest at the trial is all that is necessary.

Whether the bill in this case be considered a *foreign* or *inland* bill can make no difference, so far as the material question involved is concerned. The rule of evidence should be the same in both cases as to the production on the trial of the *identical bill presented.* Either may be accepted *supra protest,* and the reasons for the production, or accounting for the absence of the protested bill, on the trial, are alike applicable in both cases. In *Buckner* v. *Finley & Van Lear,* 2 *Peters' U. S. R.* 586, bills of exchange drawn in one state, on persons residing in another, were held to partake of the character of *foreign bills.* It had before been held, in *Townsley* v. *Sumrall, id.* 170, that such bills were to be

deemed foreign, in respect to the protest and proof of dishon-
or. A different opinion had been expressed by Mr. Justice
*Van Ness*, in *Miller* v. *Hackley*, 5 *Johns. R.* 375. It was
not, however, the point in the case, and should not, perhaps,
be considered as conclusive upon the court. When the ques-
tion arises directly for consideration, it may be proper to re-
view it. The convenience of trade and commerce prepon-
derates strongly in favor of viewing such bills as foreign, so
far, at least, as respects the protest and proof, as then the
certificate of the notary, under the seal of office, is evidence
of the protest in the foreign state, without any auxiliary sup-
port, and is so received in all courts, according to the usage
and custom of merchants.

We have already stated, and we think upon authority, that
the holder need not accompany the notice of non-acceptance
with a copy of the bill and protest, and the only question left
for consideration, upon this branch of the case is, whether
the notice was directed to the right place, and with reasona-
ble diligence. Of this, upon the evidence, we cannot enter-
tain a doubt. It was mailed for the defendant, the day of the
refusal by the drawees to accept, to a place where, upon in-
quiry, the notary ascertained the defendant resided, and
where the bill was drawn. At all events, the defendant can-
not be permitted to raise the question of proper diligence, in
endeavoring to ascertain the place of his residence after *pri-
ma facie* evidence on the subject, when he does not pretend
that his place of residence was in fact at a place different
from that to which the notice was directed.

New trial granted, costs to abide the event.