## Case No. 1,791.

### BRADSHAW v. The SYLPH.

[2 Betts, D. C. MS. 58.]

District Court, S. D. New York. 1841.

ADMIRALTY — PLEADING — LIBEL —AMENDMENT— SHIPPING — TITLE TO VESSEL — SALE BY PART OWNER—RIGHTS OF POSSESSION—JOINT INTEREST —SALE BY PART OWNER—RATIFICATION—ADMIRALTY—JURISDICTION—MATTERS OF ACCOUNT.

[1. A libel for possession of a vessel should unequivocally state the extent of libelant's interest, and that he was owner at the time of filing the libel.]

[2. Where a defect in that particular arises from accidental omission, the court will allow an amendment.]

[3. The sale of an entire vesel by one part owner in common does not authorize his co-owner to treat the sale as a tortious conversion.]

[4. A part owner to not exceeding one moiety of a vessel cannot, by suit in admiralty, demand the entire possession or sale of the vessel, in invitum against his co-owner. The Orleans v. Phoebus, 11 Pet. (36 U. S.) 175, followed.]

[5. A joint interest in a vessel is a tenancy in common, carrying with it the privileges and limitations of that interest at common law.]

[6. A bona fide sale by a part owner of a vessel, not accompanied by a bill of sale, is binding upon a co-owner who has previously authorized a sale, or has accepted part of the purchase money.]

[7. In admiralty a party cannot have remedy for matters of account unless upon the basis of an adjusted and recognized liability.]

[In admiralty. Libel by William D. Bradshaw against the schooner Sylph (Elizabeth Anna Houseman, claimant), to recover possession of the schooner. Libel dismissed.]

On the 16th of November, 1835, the schooner was sold at auction in this city, as a wreck, and was bought in by Wm. R. Kincaird, for the sum of $320. Kincaird advanced $175 of the purchase money, and the libellant $145. The auctioneer's bill of parcels was made out to Bradshaw and Kincaird as joint purchasers. On the 30th April, 1836, the custom house enrolment to B. and K. was made out. Bradshaw subsequently advanced various sums of money for refitment of the vessel, and she was run by Kincaird as master, and accounts of expenses run and earnings were at different times stated and adjusted between the parties. On the 21st April, 1837, she was arrested on admiralty process in behalf of seamen, in this port, and that night the master (K.) clandestinely absconded with her, and took her to Indian Key, Florida, and then sold her to Jacob Houseman for a valuable and full consideration, which was paid at the time. The vessel was barratrously brought to this port by her master and crew from Florida, early last July, was arrested by the crew on a claim of wages, and was discharged by this court on the final hearing of that cause, Sept. 21, 1841 [Case No. 17,740].

On the 20th July the libel was filed in the present case. It avers the joint purchase between K. and libelant, and libelant's advance of large sums of money for the use of the vessel, which have not been repaid him, and her abduction by Kincaird and sale, without his knowledge or consent, and prays she may be restored to his possession, or that she be sold, and the proceeds be paid him or such part as he may be entitled to receive. The answer and claim alleges that the vessel was purchased by Jacob Houseman in his lifetime, May, 1837, of Kincaird, bona fide, and for a full consideration; that the libellant was not a part owner; that Kincaird was sole purchaser at the auction sale, and had libelant's name inserted in the papers to secure his loan of $145, part of the purchase money; that the loan was made after K. had actually purchased the vessel, and for the purpose of satisfying the bid: that libelant authorized a sale of vessel by

Kincaird, and approved of it when sale was made known to him, and denies jurisdiction of the court to take an account as between libelant and Kincaird.

PER CURIAM. If the testimony of Kincaird is legally admissible in the case, and he is entitled to credit, the libelant has not a scintilla of equity to support his action. and, if he prevails in it, must succeed by force of technical rules alone. As the competency of this witness is denied, and his credit is also assailed on the part of the libelant, it may suffice to consider the cause as it stands upon the pleadings and other proofs without discussing the questions touching the admissibility or effect of Kincaird's testimony.

Regarding this as a possessory action, the libel is insufficient in substance in two particulars, so that no decree could be rendered in that behalf upon the pleading as it now stands: "It does not aver what extent of interest was acquired by the libelant, whether the equal moiety, or one only in proportion to his advances, that is, as of 145 to 175; and moreover it is equivocal upon the libel whether the right as owner is not set up, as a resulting trust, and as arising merely from the balance of advances and amounts being in favor of the libelant; but what is more essential, it omits to aver that the libelant was an owner of the vessel at all when the libel was filed. Assuming that these omissions are accidental, and can be rectified by the party, the court would undoubtedly allow the proper amendment to be made; and therefore it is necessary to look into the case as it is proved, and determine whether there is in it a right to this remedy under any form of pleading. One part owner has a clear power to sell his interest in a vessel, and his purchaser becomes vested with his entire right and title thereto (Jac. Sea Laws, 37, note; 1 Molloy, 310); nor does the sale of the entire vessel by Kincaird, they being tenants in common, impart to libelant a right to treat the sale as a tortious conversion of the common property (4 East, 122–126). This right was in early times allowed to be exercised in a qualified manner only. Abb. Shipp. 76; 2 Casdats del Masa, 72, c. 55. Now, however, ships are regarded merely as chattels, and subject to like laws of ownership and disposition. Hilt. pt. 2, c. 1, § 265; 4 Johns. Ch. 611; 20 Johns. 671. The evidence in this case justifies the assumption that a bill of sale was executed, and therefore, at least, as to the share of Kincaird, no question can arise as to the necessity of that document as evidence of title to a vessel. The purchase was by an American citizen resident in Florida, and, though the states and territories are foreign to each other in many transactions of a commercial nature (12 Pick. 483; 15 Wend. 527; 4 Wash. C. C. 87, 153 [Lonsdale v. Brown, Cases No. 8,493, 8,494]; [Buckner v. Finley] 2 Pet. [27 U. S.]

586), still vessels enjoy a common character and privilege in every American port, without regard to the owner's domicile ([Gibbons v. Ogden] 9 Wheat. [22 U. S.] 1; 3 Cow. 714). The libelant's action is accordingly to be considered as if brought while the title remained in Kincaird, and it is to be decided upon the question whether a part owner to not exceeding one moiety of a vessel can, by suit in admiralty, demand the entire possession or sale of her in invitum against his co-owner.

This proposition in both its terms was directly raised for adjudication in the district court of Pennsylvania. After great fullness of argument by the bar and bench, the court decided that an equal part owner could not take the vessel out of the possession of his co-owner, nor could he have a sale of her by order of a court of admiralty. Davis v. The Seneca [Case No. 3,650]. The case went by appeal to the circuit court, and was there heard upon amended pleadings and new proofs. The opinion of the court was rested upon one branch of the proposition,—the power to decree a sale of the vessel. The decision of the court was, that it was competent for a court of admiralty to order sale of a vessel, on application of one half owner, the other disagreeing thereto, when both owners wished to employ the vessel, but refused to unite either in the selection of a master or the voyage to be performed. 18 Am. Jur. 486 [Davis v. The Seneca, Case No. 12,670]. The new proofs introduced in the circuit court no other way varied the case below than in showing more explicitly that the joint owners could not agree in the employment of the vessel or appointment of master. If this judgment is a correct exposition of the law of the case, it will, as it should, receive the most respectful consideration in this court, even if it is not a decision authority in itself over this tribunal. Judge Washington admits that his opinion was very different when the case was opened, and that he had entirely concurred in that pronounced by the district judge. His views of the law seemed to have changed on a more mature consideration of the article in the marine ordinance of Louis XIV., deemed applicable to the question, and which he regards as the only authority meeting the case of two equal owners, both being willing to employ the vessel, and disagreeing as to the mariner; and he adopts the conclusion that in such case a sale must be ordered by the court, or there would be an utter failure of justice.

If it be admitted to be the right and duty of this court to examine the decisions of circuit courts, other than the one immediately its superior, and to be governed by them as by those of the English admiralty, at the present period only, when the principles on which they rest are concurred in, or it be the duty of every district court to regard the decisions of each circuit as

paramount in authority over its own opinions, yet I consider the principle governing the proceeding sanctioned by Judge Washington now definitely settled by the supreme court, and adverse to his view of the law. The Orleans v. Phoebus, 11 Pet. [36 U. S.] 175. The court defines its jurisdiction in respect to part owners, and asserts that it cannot be applied to direct a sale of a sea vessel upon any dispute between them as to her employment. The application was on behalf of a minority owner, but the rule as laid down embraces both sections,—majority and minority owners,—and excludes the power of the court to decree a sale at the instance of either. The interests of the larger share holders, which may (as in the case before the supreme court) absorb all to a particular part of the property, cannot be less deserving the protection of admiralty than a mere moiety interest. Every difficulty and hazard in respect to the enjoyment of their rights (which Judge Washington considered as exacting a judicial sale in favor of a half owner) would exist in an increased degree, under like circumstances, with them. There might be no useful employment for the vessel, and she be wasting away by expense and decay on their hands. The use to which the minority owner would put her, if turned over to him, might not only be without advantage to them, but threaten the most serious injury to the property. Nevertheless, no considerations of conveniency or protection, however imperative, can mollify · the doctrine. That abides inflexibly, and takes from a court of admiralty all prerogative to order a sale of the vessel as a method of relief.

The decision, in my opinion, therefore, by negativing the authority of the court over the question in its least and largest extremes, disposes of it also in respect to any intermediary shape. But it may deserve a moment's consideration to ascertain if the authority relied upon by Judge Washington really demands the construction put upon it; at least to the extent of holding that an equipoise of opposing ownerships will always give this court jurisdiction to decree a sale of the vessel. A joint interest in vessels is not regarded in our law a partnership. It is a tenancy in common, carrying with it the privileges and limitations of that interest at common law. Jac. Sea Laws, 37; Abb. Shipp. 68, and note. As an incident to such tenancy, the possession of one part owner lawfully acquired can never be divested by the other. Smith, Merc. Law, 106, 107. The master, being part owner and in possession, can retain the vessel as against his co-owner, because possession will turn the scale when the legal rights are in the balance. Id. 107. It must, moreover, be noticed that a joint purchase of a vessel with intent that one owner shall act as her master renders his possession part of the mutual contract, and accordingly his

equities are decidedly stronger to retain than those of his co-owner to take possession, and a court, in disturbing that arrangement, must necessarily decree adverse to the agreement between the parties and that upon which the right as part owner, has existence. Abb. Shipp. 69, 70. The interference of admiralty courts, accordingly, at the instance of owners, to assign the vessel to some in exclusion of others, always proceeds upon the assumption that neither owner is actually using or holding her. Smith, Merc. Law, 107.

Does, then, the provision of the French ordinance apply to a case when the inception and continuance of the joint ownership contemplated that one equal part owner should also be master and managing owner? The sixth article of the ordinance declares, that neither party can compel his associate to proceed to a decreed sale of a vessel owned in common unless the opinions of the owners are equally divided upon the undertaking of some voyage. The translation of the ordinance in the ancient sea laws, as by the circuit court, differs only in terms from the above. Licitation, rendered in both instances as sale merely, imports in the French law a judicial sale, and that the sea laws translate the common ownership to import a partnership. The Code de Commerce incorporates this ordinance of Louis XIV. and the preceding one (fifth) almost in terms. The method of obtaining the sale is the same as in cases of partnership effects (Code de Comm. § 4, tit. 3; Code de Proc. Civ. lib. 1, tit. 8), and there is strong reason for the argument that the whole provision is exclusively municipal. The French law, following the course of the Roman, allows a separation of effects held in common by means of an appropriate action. 6 Pothier, 608; 12 Pothier, 217. It is so regarded in the compilation of sea laws, from which Judge Peters extracted his publication (2 Pet. Adm. Append. vi.), as these two ordinances are both omitted there. Intrinsically there is nothing in the provision giving it claim to become a continual rule more than might be presented by numerous other regulations in the same Code which are invariably regarded as strictly municipal and peculiar to the French jurisprudence. Abbott discusses the topic at large (part 1, c. 3), but nowhere recognizes this ordinance as part of the general maritime law. Lord Holt holds it to be the result of the English adjudications, that the court of admiralty has no power to decree a sale of a ship at the instance of part owners. Part 2, c. 1, pp. 24, 25. No case is cited in the circuit court where this ordinance has been recognized and applied out of France; and if it has become a part of the general maritime law, there is, by its instrumentality, infused into that Code a doctrine anomalous in its nature and strongly contravening the principle upon which admiralty courts administer relief in relation to the rights of

part owners. Admiralty exercises its extraordinary prerogative in rem, to ensure the employment of vessels so as most·efficiently to promote the purposes for which such property is created, and a joint ownership of it contracted (Duston v. Hebden [Pond v. King] 1 Wils. 191; 1 Hagg. Adm. 306); and not even the court of chancery will exercise any jurisdiction of that character, regarding that of admiralty as the most efficacious and salutary. Under the proposed administration of the rule, admiralty courts become mere municipal tribunals. They may be invoked to sever interests made joint by contract, and annihilate, by sequestration and sale, property only common for objects of navigation. According to the ordinary acceptation of the powers of the court, such property comes under its jurisdiction in this behalf merely as a means of assuring its maritime use and employment. It is not intended to discuss the rule indicated by the circuit court further than to ascertain if it establishes in this court a clear jurisdiction to arrest a vessel and decree her sale at the instance of one half owner, under any circumstances of inconveniency or disagreement between the proprietors as to her employment. I cannot think it demonstrates an authority of that character. The inquiry is not irrelevant in this case, for, although the libel sets up no state of facts bringing the equity of the party within the purview of that decision, yet, should an amendment be proffered to that effect, the court must be prepared to act upon its admission or rejection.

Admitting, then, that, the conveyance of the vessel being made jointly to the libelant and Kincaird, it is to be assumed that each acquired an equal interest in her, and that this action is to be adjudged as if prosecuted against Kincaird, I am of opinion, upon the facts and circumstances before detailed, that the libelant has no right to demand the exclusive possession of the vessel (1 Hagg. Adm. 346, note), and that no authority is shown in this court to order her sale at his instance. There are other noticeable features of the case, however, which would bar this action if the difficulty of jurisdiction could be surmounted. Upon the testimony of Hatfield, it must be implied that Kincaird had full authority from the libelant to sell the vessel. If a written power was necessary, that could also be presumed. If the purchaser cannot enforce by an action in court his right to a vessel, without showing a bill of sale as evidence of his title, yet the vendor, after receiving a full consideration, and having made delivery of a vessel, by himself or agent, could no more in admiralty than in chancery reclaim the property because a full paper title had not accompanied the sale. Accordingly, it being proved that the vessel was bought bona fide; that the libelant gave a previous authority to the master to sell, or, after the sale was reported to him, ratified it by accepting part of the purchase

money, he can never be allowed to allege its nullity because a full documentary title did not accompany the sale, or because he had not given a written authority to make it. This result follows upon the libelant's own proof. If the evidence of Kincaird is received, it would place the right of the claimant on still stronger grounds of equity and law.

Again, the stress of the libelant's case is, that he is largely in advance for the services of the vessel, and that the vessel should be made answerable in this court for the reimbursement of those advances. This allegation is controverted by the claimant and upon the proofs. The accounts between the associates are not liquidated. The papers presented, setting forth particulars of accounting, would not be conclusive evidence, and there are circumstances developed upon their face strongly tending to discredit their integrity in some particulars. Unless upon the basis of an adjusted and recognized liability, a party cannot in this court have remedy for matters of account. That is a firmly settled limitation to admiralty jurisdiction. If, then, the libelant cannot recover possession of the vessel, he cannot, in this court, claim, as against her or her proceeds, the satisfaction of his outstanding unliquidated demands upon the final winding up of the dealings in regard to . her joint ownership. Without, then, examining the questions of the competency of Kincaird, or placing the decision of the cause in any respect upon his testimony, the libelant has failed, in my opinion, establishing a case of which this court can take cognizance, and his libel must be dismissed, with costs.