DATIS E STREEVER, Respondent, *v.* THE BANK OF FORT EDWARD, Appellant.

Where the State was entitled to and did pay its draft absolutely, without paying certain interest which had accrued to a party who had discounted the same for the payee, the payee of said draft, though liable to pay to his indorsee such interest, is not entitled to the possession of the draft.

Ordinarily the indorser, on paying a draft, is entitled to its possession, that he may have his remedy against the acceptor, &c.; but where there can be no such remedy, by reason that the acceptor has, by payment, discharged all his liability, such rule does not apply.

APPEAL from the judgment of the Supreme Court in the fourth district, reversing a judgment for the defendant upon the report of a referee.

On the 2d day of June, 1858, Joseph Streever was the holder and owner of a draft on the canal department, given in pursuance of chapter 365 of the Laws of 1857, drawn by Charles H. Sherrill, canal commissioner, for $6,000.12, dated December 23, 1857, and payable July 1, 1858, without interest; and being such owner, he offered the same to the defendant for discount, claiming that the holder was entitled to interest thereon from its date. Defendants said they had nothing to do with that, but would discount the draft at the rate of seven per cent interest to its maturity, which offer was accepted, with the understanding that all interest between the date and maturity of the draft was reserved to Streever. Streever then indorsed the draft to defendant, who discounted the same. The remaining facts of the case are sufficiently stated in the opinion of the court.

*Wait & Reynolds*, for the appellant.

*James S. Coon*, for the respondent.

PECKHAM, J. On the 1st day of July, 1858, there was due to the plaintiff's assignor, for interest on the draft of $6,000.12 drawn on the State, $188. Prior thereto, and on the 2d day of June, 1858, the defendant had discounted the draft, except

said interest, and the assignor indorsed it. The draft was not paid at maturity, *i. e.*, the 1st day of July, 1858; but in July, 1859, the defendant received from the State $547.40 for interest thereon, at six per cent, under a statute passed after the date of the draft, but prior to its discount; and on the 28th of December, 1859, the defendant received from the State the principal sum of $6,000.12, and surrendered the draft to the State, and it was stamped paid. The plaintiff's assignor demanded the $188 interest of the bank after its receipt, and then, after the receipt of the principal by the defendant, assigned the claim therefor to the plaintiff, who brought this action for its recovery. It is insisted, on the part of the plaintiff, that when the draft was paid to the defendant, and by him surrendered to be canceled, and it was so marked, the defendant can have no remedy for any deficiency to the indorser. The referee found for the defendant; but the court reversed his finding, on the ground above stated.

In my opinion, the action cannot be maintained. The statute gave interest on the draft at six per cent, but in no case to exceed interest for a year. (Laws of 1858, p. 417, § 2.) The government undoubtedly had the right to declare what interest it would pay, and for what time it would pay it. This is a right all governments exercise, and always have exercised under circumstances like these. The decision may not always be just or equitable; but there is no legal remedy for the injustice.

Confessedly, therefore, the defendant received from the State all it was bound to pay upon that draft, of principal and interest. In law and in fact, so far as the State was concerned, the draft was paid. But it is also conceded by the court that the plaintiff's assignor, in indorsing the draft, became liable, in case of its dishonor, to pay principal and interest, after it became due, at the rate of seven per cent. He was liable for interest from the 1st of July, 1859, to the 28th of December, 1859; during which time the State paid no interest. The liability is conceded by the court; but they say the defendant lost all remedy against the indorser, by delivering up the draft to be canceled; that it might accept

of any smaller sum in payment and deliver up the note, and that that necessarily discharged the indorser. I think this an exception to the rule laid down by the court, conceding that rule to be law in ordinary cases. Ordinarily, the indorser might be entitled to the draft for his remedy over against the acceptor. Here he had no remedy against the acceptor. The acceptor had fully paid and discharged all its liability thereon. So far, then, as the State was concerned, the indorser lost nothing, and could lose nothing, by the surrender of the draft. The reason of the rule failing, the rule should not continue. No question as to a remedy over against any other party arose, or could arise, in this case, as the canal commissioner (virtually the State) was the drawer, and the State the acceptor. The plaintiff's assignor had no remedy whatever against either on the draft: as to them, it was fully paid. Nor do I think the legal effect of the surrender would have been different, if there had been other parties to the draft.

No question of evidence arose in this case, or could arise, as to proof of the draft. It had not been destroyed. It had simply been delivered to the acceptor, and marked paid. That mark did not pay or extinguish it as to any one, if the facts did not authorize it. The draft being still in existence, in fact if not in law, could be proved in the same manner as if it had never been marked. True, the owner of a note cannot voluntarily destroy it, and then be permitted to recover, ordinarily, as he cannot be allowed to resort to secondary, when he has voluntarily destroyed the primary evidence. No such question arises here, even if it would apply, had the State destroyed the draft. The cases cited as to the necessity of producing a draft on the trial, have no application. (15 Wend., 527.) A party could always recover at law on a lost note, if not negotiable, or if payable to order and not indorsed, or if specially indorsed and not indorsed by him to whom thus made payable. (*Pintard* v. *Tackington*, 10 Johns., 104, and cases there cited.) Also, if the note had been destroyed by accident. (*Des Arts* v. *Leggett*, 16 N. Y., 582.) In this case, then, the plaintiff's assignor assigned to the plaintiff a demand against the defendant for $188, when at the same time he was

indebted to the defendant in a larger sum, upon contract. Under such circumstances, it would seem entirely clear that the plaintiff could not recover. Protest and notice thereof were clearly proved and uncontradicted. Therefore, whether the judge at the trial erroneously received evidence from the assignor of the contents of the notice he received, without its production, is entirely immaterial, as it was sufficiently proved before.

Some other points were raised at the trial and urged here. That the referee erred in his finding of fact that the assignor indorsed the draft as an indorser in the usual way. This, if error, which I do not at all admit, cannot be reviewed here. There is no force in the other objections.

The judgment of the Supreme Court, reversing that entered upon the report of the referee, must be reversed, and the judgment entered upon the report of the referee affirmed.

MORGAN, SMITH, and HUNT, JJ., dissented; all the other judges concurring,

Judgment of Supreme Court reversed, and that entered upon referee's report affirmed.