TaliakekRO, J.
Suit is brought against the defendants for $1138 33, alleged to be proceeds of sale of one hundred and sixty boxe3 of cbeese and fifty kegs of butter, consigned by plaintiff to the defendants, to be sold by them on plaintiff’s account, as his agents and factors, and which, as plaintiff alleges, was sold by the defendants in tbeir fiduciary capacity as his agents, who have failed to account to him for the proceeds, and have illegally and fraudulently converted the same to their own use and benefit. He claims from the defendants the said sum of $1138 33, with legal interest from the thirteenth July, 1867.
were indebted to the plaintiff in the sum of $1138 33, but deny that they owe them anything now; that they have been forever released and discharged from all liability to plaintiff on account of the alleged indebtedness, by their discharge in bankruptcy by decree of the United II *258 States District Court for the district of Louisiana, rendered on the thirteenth January, 1869, and they specially plead their discharge in bar of plaintiff’s claim. Judgment was rendered in favor of the plaintiff, and the defendants have appealed.
In this case the following inquiry arises: Does a consignee in selling goods consigned to him for sale on commission, actin a fiduciary capacity, according to the meaning and intendment of the thirty-third section of the bankrupt law of the United States, enacted in April, 1867, and is the obligation he is under to faithfully account for and pay over to his consignor the proceeds of the goods thus sold, one from which he is relieved by a discharge in bankruptcy?
The thirty-third section of the act of Congress, approved March 2, 1867, entitled “An Act to establish a uniform system of bankruptcy throughout the United States,” provides “ That no debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act; but the debt may be proved, and the dividend thereon shall be a payment on account of said debt; and no discharge granted under this act shall release, discharge or affect any person liable for the same debt, for or with the bankrupt, either as partner, joint contractor, indorser, surety or otherwise.”
The terms and phraseology used in the bankrupt act of 1841, in treating of the same subject matter, are to some extend unlike those just quoted from the act of 1867, and no small difference of opinion exists as to whether the words and expressions employed in the thirty-third section of the act of 1867 are to be construed as having the same meaning and import that are conveyed by those used in the first section of the act of 1841.
The first section of that act provides that “all persons whatsoever,, residing in any State, territory or district of the United States, owing debts which shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity, shall, on compliance with the requisites of the bankrupt law, be entitled to a discharge under it.”
The Supreme Court of the United States, in its interpretation of the act of 1841, in the case of Chapman v. Forsyth, 2 Howard 202, decided that a factor is not within the act, because “the cases enumerated, ‘ the defalcation of a public officer,’ ‘ executor,’ ‘administrator,’ ‘guardian ’ or ‘ trustee,’ are not cases of implied, but special trusts, and the ‘other fiduciary capacity’ mentioned must mean the same class of trusts. The act speaks of technical trusts, and not those which the law implies from the contract.’’ On the part of the defendant it is *259 argued that the case of Chapman v. Forsyth is conclusive of the questions raised in this litigation, the defendant holding that the provisions of the thirty-third section of the act of 1867 are substantially the same as those of the first section of the act of 1841 in regard to fiduciary trusts. In support of this position he refers us to the case of Cronan v. Cotting, decided by the Supreme Court of Massachusetts in 1870, a case arising under the bankrupt act of 1867, in which that court said: “ Our conclusion is, that this provision of the bankrupt act of 1867 (relating to fiduciary trusts) was framed in view of, and with the intent to adopt the construction which the Supreme Court of the United States had put upon the similar clause in the bankrupt act of 1841. We adhere to that construction as applicable to the act of 1867, until the same court shall declare otherwise.”
The facts of this case were that Cronan, the plaintiff, delivered accepted bills of exchange to the defendant, as administratrix of her husband’s estate, with directions to collect them and apply so much of the proceeds as might be necessary to the payment of debts owing from him to the estate, and to pay over to him the remainder. The court held that the phrase “ fiduciary character ” did not include the obligation of the administratrix to dispose of the bills of exchange and apply the proceeds according to the directions of the plaintiff. In the case under consideration we are referred by the defendants’ counsel to the case of Grover & Baker v. Clinton, 8 National Bankruptcy Register 312, decided in the United States Circuit Court for the Western District of Wisconsin, in 1873, in which it was held: “That money collected by an agent under an agreement to account and pay over the proceeds monthly to his principal is not a debt created in a fiduciary capacity within the meaning of the bankrupt act; that a bankrupt is not liable to arrest on such a debt, and that it will be discharged in bankruptcy.’’
In behalf of the plaintiff, on the other hand, it is contended that the benefits arising from bankrupt laws are intended for the honest but unfortunate debtor, but they can not avail him who, having the goods of another confided to him, converts them into cash, and, instead of considering money so obtained as a sacred deposit, mingles it with his own funds and with it redeems his own obligations. A distinction is drawn between an ordinary debt and a debt of the character on which the plaintiff sues in this case. In the one case it is held that the reliance is upon the solvency of the debtor, and upon the sufficiency of his assets to meet his debts; in the other it is upon his probity and moral responsibility. In the one case the creditor takes the risk of substituting the credit of the debtor for the goods which are sold to him, and-vests in him the absolute title to the goods; in the other the de *260 positor parts with none of his lights in the goods deposited, hut simply intrusts them to the depositary for a specific disposition to bo made of them.
In favor of the construction maintained in behalf of the plaintiff, we are ’referred to several decisions by tribunals of last resort in some of our sister States. In the case of Whitaker v. Chapman et al., 3 Lansing (N. Y. Rep.) 155, plaintiff sued-to recover from defendants, who were partners and factors, or commission merchants, doing business in the city of New York, the proceeds, less commissions, of one hundred and fifty-two boxes of cheese, which plaintiff claimed to have delivered to the defendants to be sold for cash, with immediate return of proceeds to him. The defendants denied that the cheese had been delivered to them to be sold for cash, and claimed to have received the cheese for sale with a guarantee to the plaintiff of payment for the sales made by them according to the custom of their trade, and they severally set up a discharge in bankruptcy. It was proved in this case that tiie commodity was received by the defendants to be sold by them on commission; that-it was sold by them; that there was a balance due the plaintiff of the net proceeds, which had not been paid over, but had been converted to their own use. It was held by the court that the deiendants, in the receipt and sale of the cheese, acted in a fiduciary character on behalf of the plaintiff, and that the discharge in bankruptcy of the defendants, and each of them, did not discharge them or either of them from the debt.
In the case of Duguid v. Edwards, 50 Barbour, N. Y. Reports 290, the plaintiffs sént a quantity of flour to the defendants, who were commission merchants at Albany, to be sold by them in the course of their business. They sold a portion of the flour at Albany, shipped a part of it to New York, which was sold there, and returned the residue on hand to the plaintiffs, when the defendants failed in business. For the non-payment of a balance of $211 remaining in their hands from the proceeds of the sales actually made by them, and for the value of one hundred and fifty barrels of flour sent to New York and sold there, the proceeds of which were never returned to plaintiffs, an order of arrest was taken against the defendants. In their defense they set up certain usages and circumstances from which they claimed that their relations to the plaintiffs were not those of ordinary factors, but were substantially those of debtor and creditor; that when they received the flour they were carrying on a general commission business at Albany. When property was consigned to them for sale they paid the freight and other charges against it, and when they sold it they did so in their own names, either separately or with other property of the same description belonging to other parties, as might prove convenient and suitable for *261 their customers; receiving payment for it in gross, and crediting the plaintiffs their proportion of the purchase price; that they deposited the proceeds of their sales in general account without distinguishing the portions owing from the sales of the property of every particular individual, and in making payment to their principals or consignors, they did so by accepting and paying the drafts drawn by them for the balances appearing by way of credits upon their books, or by remittances made directly to them. From this mode of transacting their business, and which the defendants showed was followed by others engaged in the same business at Albany and other commercial cities, the defendants insisted that the moneys they received from the sale of the plaintiffs’ flour became their property, instead of the property of the plaintiffs,, and they became indebted' simply to the plaintiffs for the balance remaining in their hands after their advances and commissions were-deducted. The court, after discussing at considerable length the relations existing between the principal and factor, decided that “ where ajpartieular mode is adopted and pursued for the transaction of the business of another, with his knowledge and assent, he will be concluded by it, and subject to all the consequences resulting from it. But where that differs from the settled duties and obligations established by law, such knowledge and assent must be shown before the party intrusting his business to another can be affected by the change j that commission merchants to whom property is consigned by the owner are the factors of the owner. They do not acquire any title or interest in the property itself beyond a mere lien for their advances in paying the expenses of its transportation to them. If they have actually made further advances upon the faith of consignments made to them, that will give them no title to the property, but will merely increase the extent of their lien. When they sell the property, even though they do so in their own names, and may consequently be regarded by the purchaser as the owners of it as between themselves and the consignors they will be deemed as selling as the agents of the latter, and as selling their property. There is nothing in such a transaction which will vest the factors with the title to the proceeds derived from such sales. On the contrary, they will receive such proceeds as the substitute or representative of the property sold, subject to the same lien, under the trust, implied of course, that the excess beyond what shall be required to discharge such lien will be held for and paid over to the consignors. If the factors mingle such proceeds of sales with their own funds, by depositing them in bank to their credit in a general account, use the money in their business generally, and fail to pay over the same on demand, they thereby subject themselves to the legal liabilities arising from the misapplication of another’s property, and to an arrest, under *262 the provisions of the Code, as having received the money in a fiduciary capacity. The understanding of the Legislature seems to have been that factors, agents and brokers, when acting in their capacities as such, are acting in fiduciary capacities, and they have accordingly provided for their arrest, as well as for the arrest of all other persons who may receive and misapply moneys received by them in the course of their fiduciary relations. Customs and usages which would have the effect of relieving a party from the duties and obligations the law would otherwise impose upon him, are not allowed to prevail unless the actual assent of the other party is secured for their observance, or they are of so notorious a character as reasonably to lead to the conclusion that he must have known of their existence and intended to assent to them. And even then they must not be unreasonable nor positively unlawful. That the usage or custom itself will not be sufficient to deprive a party of the rights otherwise secured to him by law, is so well established by the decisions as to need only a reference to them to confirm that conclusion.” 14 Johnson, 316; 1 Seld. 95, 101, 102; 16 N. Y. Rep. 392, 401, 402 ; 34 N. Y. Rep. 413.
That a commission merchant or a factor stands in a fiduciary relation to his principals, within the meaning of the bankrupt act of 1867, was decided by the Supreme Court of Missouri, in the case of Lenecke v. Booth, 47 Missouri Reports, 367, Post. In that case the court said:
“The question is here presented whether a factor or commission merchant stands in a fiduciary relation to Ms principals in .respect of the proceeds of sales of commission goods within the meaning of section thirty-three of the bankrupt act of 1867. The section provides that fno debt created by the fraud or embezzlement of the bankrupt or his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under this act.’ The corresponding provision in the bankrupt act of 1841 excluded from its benefits ‘all persons owing debts created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity.’ The ‘fiduciary capacity’ here mentioned was held by the Supreme Court of the United States to refer to technical trusts of the character of those previously mentioned, and not to trusts raised by implication of law. It was therefore held that an indebted factor or commission merchant was not a fiduciary debtor within the meaning of the act of 1841. Chapman v. Forsyth, 2 Howard 202. But the above recited provisions of the two acts (of 1841 and'1867) are quite dissimilar. Blatchford, J., in the matter of Seymour on habeas corpus, 6 Int. Rev. Rec. 60, distinguishes the two provisions, and comments upon Chapman v. Forsyth as follows: .‘The Supreme Court held that a discharge under the act of 1841 did not re *263 lease the bankrupt from any such debts (as were mentioned in 'the clause of the act of 1841 above quoted), and that no debt fell within the description of a debt created by a defalcation while acting in any other fiduciary capacity, unless it was a debt created by a defalcation while acting in a capacity of the same class and character as the capacity of executor, administrator, guardian and trustee. The court held that the language of the act of 1841 was not broad enough to include every fiduciary capacity, but was limited to fiduciary capacities of a specified standard and character. That was clearly so under that act. But in the act of 1867 the language seems to have been intentionally made so broad as to extend to a debt created by a defalcation of the bankrupt while acting in any fiduciary capacity. Therefore, under the act of 1867,’ says the judge, ‘no debt created by the defalcation of a bankrupt, while acting in any fiduciary capacity, will be discharged.’ These views are approved by Nelson, J., in his decision in re Kimbal, 6 Blatchford 292. A commission merchant acts in a fiduciary capacity and the trust attaches to the goods consigned to him for sale on commission, and to their proceeds when the goods are sold. Chapman v. Forsyth, supra; Duguid v. Edwards, 50 Barbour 288. Concurring in the views of Judge Blatchford, as above quoted, the judgment will be affirmed.”
The case in 6 Blatchford 292, in re Kimbal, was decided in the Circuit Court of the United States for the second circuit, by Judge Nelson, Associate Justice of the Supreme Court of the United States. The defendant had received a quantity of buckwheat flour to sell on commission and remit the proceeds less the commission. The flour was sold and the defendant received $758 79 over and above the commission, but no part of the proceeds was paid over. Soon after, the defendant applied for the benefit of the bankrupt act, having applied the money to his own use. Mr. Justice Nelson said:
“Looking at it [the case] as thus presented, it seems to me there is great difficulty in saying that the flour was not received and held by the bankrupt in a strictly fiduciary character. The article was placed in his possession simply to sell it and to remit the proceeds over and above his commission. The money was not the bankrupt’s when it was received on the sale, but was the money of the owner of the flour. It was a gross breach of trust to apply it to his own use. I have looked at the case of Chapman v. Forsyth, 2 Howard 202, but do not regard it as controlling the one in hand. The provision in the present act is much broader than in the act of 1841.”
The factor or commission merchant receiving from the owner property consigned to him to be sold, and the proceeds to be returned to the owner, or kept for his disposal, we can regard in no other light *264 than that of acting in a fiduciary capacity. The doctrine contended for as arising from custom and usage, that the property consigned, or its proceeds, becomes the property of the factor, for which he simply becomes the debtor of the owner, has no foundation in equity or reason. The party consigning his property to the care of another, and placing it at his disposal for the benefit of the owner, is not presumed to recognize any such doctrine. The natural and obvious presumption is that the consignor confides in the probity and the sense of justice and honor of his factor, that he will dispose of the property sent to-him for sale to the best interests of the owner, and that he will securely keep and return to him, when required, the money for which the property was sold, after deducting the expenses and a fair compensation for his services in disposing of it. Every prudent dealer seeks to have the greatest amount of security practicable in his business affairs. Such a person would surely feel more secure when relying upon the simple obligation of the agent to securely keep and return to him the money in his hands, the proceeds of sale of his property, than to know that such proceeds were intermixed with the moneys of the agent, and to be used by him as his own, leaving the principal to rely solely on the credit and responsibility of the factor, thus taking all the risks and casualties of trade which might overwhelm his factor in bankruptcy and financial ruin, and throw upon himself the loss of the property intrusted to his factor. To exonerate the factor from liability on the ground of his passing over to his general account the proceeds of the property of the consignor, and becoming the debtor of the latter for such proceeds, it is well established, as we have seen, that it must be shown that the owner or consignor knew of such custom and usage, and assented to it. The custom insisted upon by the defendants as prevailing in this respect in New Orleans is not proved to have been known by the defendant, and that he assented to it.
We conclude that factors and commission merchants when exercising their functions of receiving, selling, taking their commissions, and accounting to' their principals, are acting in a fiduciary capacity within the meaning and intendment of the thirty-third section of the bankrupt law of 1867, and are not relieved from obligations contracted in that capacity by a discharge in bankruptcy. In this conclusion we think we are abundantly sustained by the decisions and authorities we have adverted to.
It is therefore ordered that the judgment of the district court be affirmed with costs.
Rehearing refused.