ISAAC JOSEPH, APPELLANT, VS. JULIUS SALOMON, APPELLEE.

1. The plaintiff filed six replications to the defendant's plea. The defendant demurred to them all, the court sustaining the demurrer as to five of them, and overruling as to one : *Held*, That inasmuch as the five replications to which the demurrer was sustained contained nothing more as an answer to the plea than was contained in the one as to which the demurrer was overruled, the judgment sustaining the demurrer cannot be assigned as error.

2. A bill of exchange drawn in Florida, payable in Georgia, the drawer being a resident of Florida, the drawee a resident of Georgia, and the payment to be made in Georgia, is a foreign bill.

3. The general rule is, that where a notice of the non-acceptance or non-payment of a foreign bill of exchange is to be proved, a protest is indispensable, and the proof cannot be supplied in any other way.

4. "Although the drawer has no funds in the hands of the drawee, yet, if he has a right to expect to have funds in the hands of the drawee to meet the bill, or if he has a right to expect the bill to be accepted by the drawee in consequence of an agreement or arrangement with him, or if upon taking up the bill he would be entitled to sue the drawee, or any other party to the bill, then in every such case he is entitled to strict notice of the dishonor." 9 Fla., 519.

Appeal from the Circuit Court for Jackson county.

In December, 1880, the appellant, Isaac Joseph, brought his action against Julius Salomon in the Circuit Court in

and for Jackson county, upon a bill of exchange drawn by Salomon at Marianna, Florida, upon J. W. Woolfolk at Columbus, Georgia, payable ten days after date, and dated December 4, 1881, in favor of the "Pioneer Stores," and subsequently endorsed to the plaintiff and appellant. The declaration alleges the making of the bill of exchange, its due endorsement by the payee to the appellant, the non-payment of the bill when presented on the day it became due, upon the ground that the defendant had no funds to meet it, and that the defendant was duly notified of such fact.

The second count in the declaration is upon an account stated. To the second count defendant plead not indebted.

The defendant by other pleas admits making the bill of exchange, but denies that it was ever protested for want of payment, or that he had notice of its dishonor; says he had a running account with J. W. Woolfolk, "upon whom he had repeatedly and recently before drawn drafts that were honored by the said J. W. Woolfolk when he had no funds in his hands to meet said drafts, and to whom he was shipping cotton almost weekly, and at the time said draft was drawn, and at the time of the alleged refusal to pay it, there was in transit to the said J. W. Woolfolk, and consigned to him by defendant, between seventeen and twenty-three bags of cotton, shipped by defendant to meet drafts which defendant expected to draw upon him as he had been doing for some time, of which fact defendant had notified the said J. W. Woolfolk by mail as usual, and had every reason to believe, and did believe, that the said draft would be honored and paid when due."

To this plea the plaintiff filed replications.

1st. Admitting that the draft sued upon was never protested, but alleging that it was duly presented for acceptance and for payment, and that it was neither accepted or paid, of all of which defendant had notice.

2d. That when the draft was drawn by the defendant the defendant was largely indebted to Woolfolk, and had been notified by him not to draw any more drafts upon him.

3d. That at the date of the drawing of the draft the cotton mentioned had not been shipped, and when shipped it was through one Alexander, agent of Woolfolk, to be applied to a debt due from defendant to Woolfolk.

4th. That when the draft was drawn the defendant had no sufficient reason for believing that it would be honored and paid when due.

5th. That on the date of the draft, and afterwards until it was payable, the defendant had no funds in the hands of Wookfolk or in transitu subject to be applied to the payment thereof.

6th. That the draft was given to payee for a debt due by defendant to payee at the date thereof; that when it was drawn the defendant was largely indebted to the payor, and had been instructed by him not to draw any more drafts upon him; that the cotton alleged to have been in transitu at the time the draft was drawn, and at the time of the refusal to pay it by the payor, was applied by the payor; that defendant suffered no injury from the non-protesting and want of notice of non-acceptance or non-payment of the draft.

To the whole of these replications the defendant demurred for the reason that they " state no sufficient grounds of defence, are not responsive to the pleas, join no issue and are indefinite and immaterial."

The court sustained the demurrer to the first, second, third, fifth and sixth replications, and overruled the demurrer to the fourth replication.

Trial of the cause was had on the 30th day of May, A. D. 1882. The evidence was conflicting, and a verdict was found for the defendant.

The plaintiff moved the court for a new trial on the following grounds:

1st. The verdict is contrary to law.

2d. The verdict is against the charge of the court.

3d. The verdict is without evidence to sustain it.

4th. The verdict is clearly in disregard of the preponderance of the evidence.

The court overruled the motion for a new trial and an exception was taken. From the judgment then entered in favor of the defendant this appeal is brought.

The errors assigned are as follows:

1st. The court erred in sustaining the demurrers to the 1st, 2d, 3d, 5th and 6th replications of the plaintiff to defendant's plea, filed May 26, 1882.

2d. The verdict of the jury is contrary to law.

3d. The verdict of the jury is without evidence to sustain it.

4th. The court erred in overruling the motion for a new trial.

*J. F. McClellan* and *J. E. Yonge* for Appellant.

1. The drawing and delivery of the draft is admitted, as well as the presentation and non-payment.

2. The defendant, as drawer, claims that he is discharged from liability because he says he received no notice of dishonor and non-payment.

3. Upon the question as to whether the defendant received notice of the non-payment, there is a conflict of testimony, the holder, the plaintiff in this case, as well as Woolfolk, testifying that they wrote to defendant giving such notice and defendant denying the receipt of such letters.

4. The merits of the question of notice to the defendant, as drawer, are presented as a question of law in this case

by the replications 1, 2, 3, 5 and 6 filed by the plaintiff to the defendant's pleas, filed 26th May, 1882, to which demurrer was sustained.

From the pleadings stated it appears that the defendant drew the draft upon Woolfolk while he had no funds in Woolfolk's hands, and that by the non-payment of the draft the defendant suffered no damage. The defendant demurred to the replications setting up these facts, and the court sustained the demurrer, and this judgment of the court is assigned as the principal error.

We contend:

1st. That the drawer of a draft is not discharged from liability by want of notice of non-acceptance or non-payment, unless he sustains injury thereby. We cite Patten vs. Newell, 30 Geo., 271. In this case the controversy was between the holder and drawer, the same as this case. The court held that the drawer not having sustained any damage was not discharged from liability for want of notice. Ibid, p. 274; also 21 Miss., (13 Smedes & Marshall) p. 11; Pack vs. Thomas, 17 Wendell, p. 94; Commercial Bank of Albany vs. Hughes, 9 Fla., 521; Pitt vs. Jones.

We contend that the proof in this case fully sustains the proposition that the defendant suffered no damage by reason of the non-payment of his draft, for by his own testimony it appears that he is still indebted to Woolfolk, and had not the ruling of the court precluded the jury from considering the question the verdict must have been for the plaintiff. As to the plea by defendant that he had every reason to believe that the draft would be paid, we submit that the evidence fails to show a basis for such a belief, and such a belief as is contemplated must be founded upon facts such as would reasonably support such a belief.

*D. L. McKinnon* for Appellee.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

The making of the bill as alleged in the declaration is admitted by the pleas, but the defendant claims that he is discharged from liability thereon because, he says, the bill was not protested for either non-acceptance or non-payment.

To this the plaintiff replies, first, by admitting that the bill was not protested, but says it was duly presented for acceptance and for payment, and that it was neither accepted nor paid; of all of which defendant had notice.

Second. That when the bill was drawn defendant was largely indebted to the drawee, and had been notified not to draw on him.

Third. That at the date of the bill the cotton mentioned in the plea had not been shipped, and that it was subsequently shipped through the agent of drawee to be applied to a debt due by the defendant to the drawee.

Fourth. That the defendant had no sufficient reason to believe that the bill would be honored and paid when due.

Fifth. That the defendant had no funds in the hands of the drawee or in transitu to meet the bill when due.

Sixth. That the bill was given for a debt due by defendant to the payor named in bill, and that defendant suffered no injury from the non-protesting, want of notice of non-acceptance or non-payment of such bill.

The replications were demurred to, and the court sustained the demurrer as to all except the fourth.

We cannot see how any of these several replications answer the principal fact set up in the plea of want of protest and notice. It is certainly no answer to such a plea that the bill was duly presented for acceptance and also for payment, and that it was neither accepted nor paid. Or that

the drawer, the defendant in this case, was indebted to the drawee, Woolfolk, and had been notified not to draw more on him.   Or that the cotton mentioned in the plea had not been shipped, or that it was afterward applied to the debt of the defendant owing to Woolfolk, or that the defendant had no funds to draw against, or that the bill was given to pay a debt due from the defendant to the holder of the bill. The evident object of the pleader in these several replications to the plea was to assert that although the defendant may have had cotton in transitu to the drawee as alleged in the defendant's plea, yet he had no sufficient reason for believing that the bill would be paid at maturity, and this is sufficiently set up in his replication as number four, to which the demurrer was not sustained ; and this whole question was tried and passed upon as appears by the evidence as embodied in the record.   The five replications as to which the demurrer was sustained in fact contain nothing further as an answer to the plea than is contained in the fourth.

The defendant made the bill payable to the order of the " Pioneer Stores."   It was subsequently endorsed to this plaintiff.   The simple question is, were such necessary steps taken by the plaintiff as would render this defendant liable for its dishonor.   The plaintiff to sustain his action proved by A. M. Doyle that as soon as this bill was received by the " Pioneer Store " it was presented to the drawee for acceptance, and he refused to accept.   " It was then placed in bank, ' Pioneer Store ' thinking it might be paid when due, should Woolfolk receive any cotton, though they had no promise from Woolfolk that he would pay it."   The same witness further says that " on December 17, 1880, the day of maturity of such draft, witness wrote Salomon at Marianna, Fla., informing him that the said draft was not paid, and that the bank had returned

the same, and called on the 'Pioneer Store' for the money, it having been endorsed by 'Pioneer Store' and placed in the bank to their credit." Daniel Joseph testifies that he knows the draft was presented for acceptance and payment, and that it was not accepted or paid. J. W. Woolfolk, a witness for plaintiff, says: "The draft was presented to me for acceptance, and I declined to accept it; it was, when due, presented for payment, and I declined to pay it. The reason why I declined was, Mr. Salomon was at the time largely indebted to me, and I did not care to increase his indebtedness. Salomon had a running account with me when the draft fell due. He had notified me per mail of the shipment of about twenty bales of cotton, but which had not been received up to that time." "I had written Salomon to draw no more drafts on me, as he then owed me about $1,000." Witness was not positive whether he notified Salomon of his non-payment of the draft or not, but thinks he did. Says Salomon knew it would not be honored, because he had written him before that to draw no more drafts on him. On his cross-examination this witness says: "Twenty bales of cotton were turned over to my agent, Mr. Alexander, at Haywood's Landing, and shipped in my name. Nineteen bales of this cotton was received on December 16, December 21, January 3; the last bale was never received." Mr. Lewis for plaintiff testified that he was a shipping merchant at Haywood's Landing on the Chattahoochee. Defendant had at his landing in early part of December, 1880, 18 or 20 bales of cotton with instructions to ship to J. W. Woolfolk, of Columbus, Ga. About December 14, 1880, defendant and a Mr. Alexander came there and the cotton was turned over to Alexander as agent of Woolfolk, and by him shipped to Woolfolk. Some of the cotton had remained there for some time, perhaps a month; could not be shipped on account of low water in the river.

The plaintiff here rested his case, and the defendant was sworn in his own behalf, and testified in substance as follows : When I drew the draft December 4 I expected it to be accepted and paid. I had cotton in transitu to the drawee. I did not receive a letter from Woolfolk notifying me of the non-acceptance or non-payment of the draft. Never received a letter from him telling me not to draw upon him before I drew this draft.

On his cross-examination he says : " When I say I had cotton in transitu to Woolfolk I mean that I had sent it from here to Haywood's Landing, on the river, to be shipped. I had at Haywood's 17 to 23 bales of cotton. On December 14, 1880, I turned the cotton over to Mr. Alexander to go on my debt to Mr. Woolfolk. Nothing was said about the draft. The cotton did not pay Mr. W. all I owed him. There is a small balance still due him. I included him in my assignment as one of my creditors to the extent of $300. I now owe the draft in suit, have never paid it. When I drew the draft I had between 17 and 23 bags of cotton in transitu consigned to Woolfolk, and never had the slightest doubt but that it would be honored and paid when due, and thought that it had been paid or accepted at the time I made my assignment on the 14th December, 1880, and therefore included Woolfolk in my assignment, supposing that on a final settlement there might be due him a few hundred dollars, as I had drawn another draft on him after the one sued upon. Had I known that Woolfolk had refused to accept the draft I would not have included him in the assignment, and would have taken steps to have stopped the cotton. I knew nothing about the non-acceptance of the draft until this suit was commenced. The draft was not protested, nor had I received any notice from any one that it had not been accepted and paid up to the institution of the suit, in fact have not yet

received any notification from 'Pioneer Store' or Isaac Joseph that it has not been paid: I had a running account with Woolfolk, and he frequently honored my drafts when I had no funds in his hands to meet them. I had notified Woolfolk of the shipment of the cotton at the time I drew the draft or before."

There was no evidence introduced upon the part of the plaintiff to sustain the second count in the declaration.

The charge of the court to the jury in this case is not embodied in the record, therefore it is presumable that the court gave to the jury correct instructions in regard to the law of the case.

This bill is a foreign bill, being drawn in Marianna, Fla., payable in Columbus, Georgia, the drawer being a resident of Florida, the drawee a resident of Georgia, and the payment to be made in Georgia. 1 Daniel on Neg. Inst., §9, 2d Edition, and citations ; Buckner vs. Finley *et al.*, 2 Peters, 589 ; Phœnix Bank vs. Hussey, 12 Pick., 483 ; Hall & Co. vs. Davis, 41 Ga., 614; Wells vs. Whitehead, 15 Wend., 527 ; Ticonic Bank vs. Stackpole, 41 Maine, 302 ; Bank U. S. vs. Daniel, 12 Peters, 32 ; State Bank of Ind. vs. Hayes, 3 Ind., 400.

This being a foreign bill, was protest and notice necessary ? Kent Commentaries, Vol. 3, 117, lays down the rule as follows: " The demand of acceptance of a foreign bill is usually made by a Notary, and in case of non-acceptance he protests it, and this notarial protest receives credit in all courts and places by the law and usage of merchants, without any auxiliary evidence, and it is a requisite step, by the custom of merchants, in case of the non-acceptance or non-payment of a foreign bill, and must be made promptly upon refusal. It must be made at the time, in the manner and by the persons prescribed, in the place where the bill was payable. It is sufficient, however, to note the protest

on the day of the demand, and it may.be drawn up in form at a future period. The protest is necessary for the purpose of prosecution, and it must be stated and proved in a suit on the bill." In Daniels on Neg. Inst., §7, it is said that " the chief difference between foreign and inland bills is this: The former must be protested in order to charge the drawer, while the latter need not be." Again in the same work in §579, the author says : " But in respect to foreign bills which are dishonored by refusal of acceptance or payment, the liability of the drawer and endorsers can only be preserved by a protest and notice. Notice alone being necessary in the case of inland bills."

In the case of the Phœnix Bank vs. Hussey *et al.*, 12 Pickering, 483, the court says: " It is a well settled rule founded upon the custom of merchants that whenever notice of the non-acceptance or non-payment of a foreign bill of exchange is to be proved, a protest is indispensably necessary, and cannot be supplied by witnesses or in any other way." See also 3 Ind., 400, *supra.*

The counsel for appellant insists that the drawer of a draft is not discharged from his liability thereon by want of notice of non-acceptance or non-payment unless he sustains injury thereby. The rule in such cases has been clearly established by this court in Pitts vs. Jones, 9 Fla., 519. In that case this court says: " We are satisfied we may safely adopt the rule as before quoted from Judge Story in his work on Bills, 311, as the. true rule on this subject. That ruling is, ' although the drawer has no funds in the hands of the drawee, yet if he has a right to expect to have funds in the hands of the drawee to meet the bill, or if *he has a right to expect* the bill to be accepted by the drawee *in consequence of any agreement* or arrangement with him, or if *upon taking up the bill he would be entitled to sue the drawee* or any other party on the bill, * *

then in every such case he is entitled to stick notice of the dishonor.' "

The jury have applied the facts in this case as furnished by the witnesses before them to this rule so laid down by this court. The evidence, as the counsel for the appellant admits in his argument, was conflicting, and the jury have found for the defendant. The defendant clearly testifies that when he drew the draft he had between 17 and 23 bags of cotton in transitu to the drawee, and never had the slightest doubt but that it would be honored and paid when due, and that he had no notice of its dishonor from any person up to the time of the commencement of the action upon it; that had he known that the drawee had refused to accept the draft he would not have included him in his assignment, and would have taken steps to have stopped the cotton. The jury have by their verdict said that the defendant came within the rule as laid down by this court in 9 Fla., *supra*.

We cannot say that upon the evidence the jury erred in their verdict, or that the court was in error in overruling the motion for a new trial.

The judgment is affirmed.